J. Don Trelfall and Lucille M. Trelfall v. Commissioner. Samuel S. Bruce and Margaret S. Bruce v. Commissioner.
Trelfall v. Commissioner
Docket Nos. 1533, 1535.
United States Tax Court
1944 Tax Ct. Memo LEXIS 253; 3 T.C.M. (CCH) 461; T.C.M. (RIA) 44157; May 16, 1944
*253 Eugene R. Speer, Esq., 2137 Oliver Bldg., Pittsburgh, Pa., for the petitioners. J. Harrison Miller, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax as follows: Docket
Deficiency
No.
Petitioner
Year
Amount
1533
J. Don Trelfall and
1939
$138.38
Lucille M. Trelfall
1940
306.18
1535
Samuel S. Bruce and
1939
257.80
Margaret S. Bruce
1940
376.62
The question in issue is whether J. Don Trelfall and Samuel S. Bruce, conducting an agency business under the name of Martin, Trelfall and Bruce as copartners, are liable to income tax upon the amounts of money paid by the partnership to Kathryn W. Martin, the widow of a deceased partner. Findings of Fact The petitioners, J. Don Trelfall and Lucille M. Trelfall, husband and wife, are residents of Pittsburgh, Pa., and Samuel S. Bruce and Margaret S. Bruce, husband and wife, of Washington, D.C. The wives appear as petitioners solely because the returns for 1939 and 1940 filed by their husbands with the collector of internal revenue at Pittsburgh, Pa., were joint returns. The *254 husbands will hereinafter be referred to as the petitioners. During the taxable years the petitioners operated an agency business under the name of Martin, Trelfall and Bruce, the business of which was to secure contracts of railroad companies for The D. & M. Cleaning Process, Inc. [hereinafter sometimes called the "Cleaning Company"], whose headquarters were in Chicago. This corporation owned several patents on machines and on processes for cleaning locomotives and other car equipment. The income of the agency business consisted of commissions paid by the Cleaning Company upon the contracts secured by the petitioners with the railroad companies. Partnership returns for the partnership of Martin, Trelfall and Bruce were filed by the petitioners with the collector of internal revenue at Pittsburgh for the calendar years 1939 and 1940. Such returns showed the amounts of profits which accrued to the petitioners and, also, the amount which was accrued and paid over to Kathryn W. Martin under certain contracts which the petitioners had with her. Prior to April 18, 1934, P. A. Martin, as sales representative of the Cleaning Company, had negotiated continuing contracts between it and *255 various railroads comprising the New York Central railroad system. Martin had formerly been a car builder employed by the New York Central Railroad and had a large acquaintanceship with officials of that railroad. It was through such association that he had been able to obtain contracts from the New York Central system. His compensation consisted of commissions on the pieces of equipment cleaned. On April 18, 1934, P. A. Martin and J. Don Trelfall entered into a partnership agreement to carry out the provisions of an agency contract between the Cleaning Company and Martin. The compensation to be received on account of the continuing contract with the various railroads comprising the New York Central system was under the partnership agreement to remain the property of P. A. Martin. The partnership agreement provided that upon the death of either party revenues received should be applied "to the benefit of his heirs or assigns during their lives." On December 31, 1935, the Cleaning Company entered into a new agency agreement with Martin and Trelfall. This agreement provided for the payment of the compensation of the agents to P. A. Martin and J. Don Trelfall, or the survivor of them, *256 upon all contracts negotiated by the agents so long as the contracts remained in force. Martin and Trelfall instructed The D. & M. Cleaning Process, Inc., to make all payments derived from contracts with the railroads comprising the New York Central system to P. A. Martin, his heirs, or assigns, and not to pay them over to the partnership. Some time during the summer of 1937 Samuel S. Bruce, the general traffic manager of the Koppers Co., became associated with P. A. Martin and J. Don Trelfall in the agency of the Cleaning Company. P. A. Martin died September 16, 1937. Soon thereafter the Cleaning Company advised Trelfall and Bruce that it was freed from the contract which it had with Martin and Trelfall. It proposed thereafter to discontinue the payment of commissions upon the New York Central system contracts. Representations were made to the Cleaning Company by Trelfall and Bruce that if this were done the New York Central system might not continue its contracts for the use of the Cleaning Company's apparatus and processes; for the former associates of Martin connected with the New York Central system were interested in seeing that his widow receive the commissions upon the contracts *257 which had formerly been his. During the period from September 17, 1937, the date of the death of P. A. Martin, to March 10, 1938, J. Don Trelfall was negotiating with the Cleaning Company for the purpose of obtaining a new agency contract. On March 10, 1938, the Cleaning Company and Trelfall entered into an agreement under which Trelfall was to act as agent for the Cleaning Company. This agreement was dated September 17, 1937, although actually executed March 10, 1938. On the same date (March 10, 1938) Trelfall by letter addressed to The D. & M. Cleaning Process, Inc., appointed Samuel S. Bruce his working assignee under the agency agreement. On March 17, 1938, J. Don Trelfall, Samuel S. Bruce, and Kathryn W. Martin entered into an agreement with regard to the distribution of compensation to be received by Trelfall under his agency agreement with the Cleaning Company. This agreement provided that the income derived from contracts with railroads of the New York Central system, less the actual expense of continuing in effect such contracts, would be payable to Kathryn W. Martin during her life or until her remarriage. By a subsequent agreement dated October 25, 1938, between Trelfall, *258 Bruce and Kathryn W. Martin it was provided that Kathryn W. Martin's participation in the income derived from contracts with the railroads of the New York Central system was changed to two-thirds of such net income not in excess of $300 per month. By an agreement of October 13, 1939, this participation in the agency profits was reduced to one-half of the net income from the New York Central system contracts. The net income of Martin, Trelfall and Bruce for the year 1939 and its distribution were as follows: Kathryn W. Martin
$4,251.32
Samuel S. Bruce
2,911.70
J. Don Trelfall
3,528.45
Total
$10,691.47 The distribution was in accordance with the contracts dated October 25, 1938, and October 13, 1939. The net income of Martin, Trelfall and Bruce for the year 1940 and its distribution were as follows: Kathryn W. Martin
$3,112.61
Samuel S. Bruce
3,981.46
J. Don Trelfall
4,581.47
Total
$11,675.54 This distribution was in accordance with the contract dated October 13, 1939. Opinion The petitioners allege that the respondent erred in taxing equally to them the amounts paid by the organization known as Martin, Trelfall and Bruce during the years 1939 and 1940. *259 They allege that Kathryn W. Martin was a partner in the business; if not, that the amounts paid to her were pursuant to a business contract and that the amounts constitute legal deductions from the gross income of the partnership business actively carried on by Trelfall and Bruce. The position of the respondent is, first, that Kathryn W. Martin was not a partner in any business carried on by Trelfall and Bruce; secondly, that the amounts are not a legal deduction from the gross income of the partnership carried on by Trelfall and Bruce since they were amounts paid to her in purchasing the goodwill of the partnership and were therefore a capital expense or, if not a capital expense, that they were gratuities paid by the petitioners to Kathryn W. Martin. In the circumstances of the case we do not think it is important to consider whether Kathryn W. Martin was a partner in the business conducted by Trelfall and Bruce. There is no evidence that she contributed any services to the partnership or that she contributed capital - unless it be that her acquaintanceship with her deceased husband's associates in the New York Central system can be regarded as a contribution of capital. All *260 the evidence goes to show that the maintenance of the contracts between the different railroads comprising the New York Central system and The D. & M. Cleaning Process, Inc. was necessary in order that Trelfall and Bruce might obtain the contracts of other railroads. The petitioners feared that if Kathryn W. Martin did not receive a share of the profits of the agency business her friends in the New York Central system would not be interested in continuing the contracts in force and that the contracts might be cancelled. The respondent argues that the payments made to Kathryn W. Martin were gifts. In our opinion there is no evidence to support such a contention. The contracts which the petitioners entered into with Kathryn W. Martin were business contracts. The evidence completely refutes the respondent's contention that the payments were made because of any friendship for Mrs. Martin or her deceased husband. The respondent's contention that the payments were made for the purchase of P. A. Martin's interest and were therefore capital expenditures has nothing to support it. The payments were not made for the purchase of goodwill but for the purpose of continuing in existence the contracts *261 between the railroads comprising the New York Central system and The D. & M. Cleaning Process, Inc. The petitioners feared that if Martin's widow did not receive a share in the profits she would become dissatisfied and that the New York Central system contracts would be cancelled. Clearly, a payment which is made under these circumstances can not be regarded as an amount paid for the acquisition of a capital asset. We are of the opinion that the amounts paid by the petitioners to Kathryn W. Martin constituted an ordinary and necessary expense of carrying on the business of the partnership which existed between petitioners Trelfall and Bruce. Decisions will be entered under Rule 50.